Filed 12/29/20  P. v. Thomas CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL THOMAS,<br><br>    Defendant and Appellant. | D077117<br><br><br>(Super. Ct. No. CRN6769)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed on December 8, 2020, be modified as follows:

On page 2, under the Facts and Procedural Background, paragraph one, second sentence, the words "the use of" are omitted.  It should read as follows:

"Thomas was sentenced to an indeterminate term of 25 years to life for the murder plus one year for being armed with a firearm."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

McCONNELL, P. J.

Copies to:  All parties

Filed 12/8/20  P. v. Thomas CA4/1 (unmodified opinion)
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL THOMAS,<br><br>    Defendant and Appellant. | D077117<br><br><br><br>(Super. Ct. No. CRN6769) |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Reversed and remanded with directions.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, appellant Paul Thomas filed a petition under Penal Code[1] section 1170.95 for resentencing of his 1981 murder conviction. The trial court summarily denied the petition without appointment of counsel and without permitting briefing. Thomas contends and the Attorney General agrees, the petition sufficiently alleged a prima facie case for relief that at least required the appointment of counsel and briefing by the parties. We agree the trial court failed to comply with the procedural steps required by the statute. Thus, we will reverse the order summarily denying the petition and remand the case to the trial court with directions to appoint counsel, permit the parties to brief the issues, and to take such further proceedings as may be appropriate.[2]

## FACTS AND PROCEDURAL BACKGROUND

A jury convicted Thomas and his co-defendant of robbery and first degree murder in 1981. Thomas was sentenced to an indeterminate term of 25 years to life for the murder plus one year for the use of a firearm. This court affirmed the conviction in an unpublished opinion. (*People v. George Albert Fredericks and Paul Francis Thomas II* (Aug.13, 1983, 4 Crim. No. 13574 [nonpub. opn.] (*Thomas*).)

In our opinion we summarized the facts as follows:

"In December 1980, Fredericks owed $3,000 to Lou Roper, his drug supplier. He repaid about $1,500, borrowed from his next door neighbor Michael Johnson in mid-December. When Fredericks paid this amount,

---

[1]    All further statutory references are to the Penal Code.

[2]    Thomas raises a number of constitutional issues based on the court's failure to appoint counsel and conduct briefing. Given our decision to reverse and remand, we find it unnecessary to address those issues in this opinion.

2

Roper demanded the rest of the money and threatened Fredericks. Arrangements were made to pay the remaining amount on Christmas Eve.

"Around December 22 or 23, Fredericks asked Thomas to accompany him to a meeting with Roper. They discussed a plan to kill or rob Roper. Johnson was present at one of these discussions. Fredericks promised to pay Thomas for his services. He asked Thomas to bring his .9 millimeter Smith & Wesson gun because it looked more impressive than his own.

"On Christmas Eve, Thomas and his girlfriend Gayle Price went to the Silver Spur bar. Around 11:30 p.m., Fredericks and Armando Cruz arrived in Cruz' pickup truck. Leaving Cruz in the truck, Fredericks went inside the bar. He returned a few minutes later with Thomas. Thomas went into Price's blue van, changed into old clothes and emerged with something wrapped in an old shirt. Fredericks, meanwhile, asked Cruz if he and Thomas could borrow Cruz' truck to get some cocaine. Cruz consented. Fredericks gave Cruz $20 to buy drinks at the bar while he waited for their return.

"Fredericks and Thomas drove to a Denny's restaurant on Palomar Airport Road where Fredericks made several calls between 11:30 p.m. and 1:10 a.m. to the Roper residence. Roper was out but his mother was there taking care of Roper's daughter. Roper had instructed his mother to expect a call from Fredericks. While he was out, Roper called home periodically to see if Fredericks had called and at one point suggested his mother tell Fredericks to come to the Roper residence. Roper's mother gave this message to Fredericks but he refused and left the Denny's phone number. When Roper returned home around 1 a.m., he called the Denny's number and left a few minutes later. That was the last time Roper's mother saw him.

3

"Roper drove to a 7-Eleven near Denny's. Fredericks and Thomas met Roper at the 7-Eleven parking lot and directed him to get into their truck. They drove on Palomar Airport Road to Laurel Tree, then down Laurel Tree until the pavement ended and it intersected with an unnamed dirt road. At this point, they all got out of the truck.

"In pretrial admissions Thomas told Officer Carroll, Fredericks and Roper got into the back of the truck while Thomas waited inside. Roper had a gun. Fredericks went crazy. A gun battle ensued; Roper fired twice. Fredericks killed Roper, then dumped the body into a ditch by the side of the road. Fredericks took Roper's wallet.

"In his pretrial talking (admissions) Fredericks told Johnson that Roper did not have the expected drugs so he, Fredericks, wanted to back out of the intended killing; Thomas insisted upon going through with the plan. Fredericks agreed, promising to pay Thomas $2,400. Roper and Thomas then moved a distance from Fredericks. Roper fired a couple of shots. Thomas emptied his gun, reloaded and fired again. They picked up the spent casings and divided Roper's money.

"After the killing, Fredericks and Thomas drove to a . . . restaurant where Cruz and Thomas' girlfriend were waiting. Thomas came in first and said Fredericks was in the restroom washing blood off his hands. Soon after, they left—Thomas and his girlfriend in her van, Fredericks and Cruz in Cruz' truck.

"On his way home, Thomas stopped at a bridge over a lagoon and threw his gun into the lagoon and according to witness Cruz, Thomas seemed unusually quiet. Later, they took a walk on the beach where Thomas threw a box of bullets into the ocean. Over the next three days, Thomas told his

girlfriend about the killing. He said they met Roper. Roper pulled a gun. Then 'everything went crazy.' Roper fired twice. Fredericks returned the fire and killed Roper.

"After leaving [a restaurant], Cruz testified he and Fredericks drove around for a while, including down Alga Road, and he saw Fredericks throw something out of the window. Roper's wallet was later found nearby. Fredericks, during the rest of the night and next morning, made a number of telephone calls to the Roper residence telling Mrs. Roper her son had never shown up and he was trying to locate him. After breakfast, Fredericks directed Cruz to drive into a self-service car wash. Fredericks washed the truck, paying particular attention to the passenger side. A few days later, Fredericks offered to replace the tires on Cruz' truck.

"Thomas' and Fredericks' trial testimony differed markedly from their pretrial statements. They denied meeting Roper that evening. Roper called Fredericks at the Denny's and agreed to meet at the 7-Eleven. When Roper was expected at the 7-Eleven, Thomas and Fredericks left Denny's. Thomas waited in the truck while Fredericks, with Thomas' gun in hand, proceeded to walk across a gas station on his way to the 7-Eleven. Before he reached the 7-Eleven, he was intercepted by a man with a gun. This man ordered Fredericks to hand over Thomas' gun and to enter a nearby van. In the van were two other people Fredericks did not know. They told Fredericks to do certain things and made an implied threat by showing him photographs of his children. Fredericks and Thomas then left and drove to [a restaurant] where they met Cruz and Price. Fredericks used the bathroom there because he was badly shaken by the meeting with the strangers. The next day, Fredericks received a telephone call from the strangers informing him that Roper was dead. Fredericks denied telling Johnson he had participated in

5

killing Roper. Thomas said when he spoke to Officer Carroll he made up details to make it 'sound coherent.' " (*Thomas, supra,* 4 Crim. No. 13574 at pp. 2-6.)

On October 25, 2019, Thomas filed a petition under section 1170.95 seeking to have his sentence vacated and to be resentenced. On November 25, 2019, the trial court denied the petition by written order concluding, that based on the facts recited in our prior opinion, Thomas was not eligible for relief as a matter of law. Accordingly, the court did not appoint counsel or conduct any form of hearing.

Thomas filed a timely notice of appeal.

## DISCUSSION

As we have observed, the parties agree on the procedural issues and the People concede the trial court improperly dismissed the petition without complying with the requirements of the statute. We agree with the analysis by the parties, and, accordingly, our discussion will be brief.

Section 1170.95 contemplates a two-step process in order to determine if an evidentiary hearing is required. Subdivision (c) provides:

> The court shall review the petition and *determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.* If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a *prima facie showing that he or she is entitled to relief*, the court shall issue an order to show cause. (§ 1170.95, subd. (c), italics added.)

6

Caselaw recognizes there will be cases where it is possible to determine from court records that a petitioner is ineligible for relief as a matter of law. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493.)

While it is possible in some cases to determine ineligibility as a matter of law, the case before us is not one of those cases.

Here, the jury considered both felony murder and willful deliberate premeditated murder theories. This court's prior opinion does not consider whether Thomas was an active participant in the killing. (*Thomas*, *supra*, 4 Crim. No. 13574.) Such may be the case, but it cannot be resolved merely by reference to our prior opinion.

In order to comply with the statute, the court should have appointed counsel and allowed the parties to brief the issues before deciding whether Thomas was not eligible or whether the court should issue an order to show cause. Failure to follow the statutory steps require reversal of the court's decision and remand for further proceedings.

## DISPOSITION

The order denying Thomas's petition for resentencing under section 1170.95 is reversed. The case is remanded to the trial court with

directions to conduct further proceedings consistent with the views expressed in this opinion.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.